# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAUL DIBENEDETTO<br>Plaintiff | * | CIVIL ACTION |
| VERSUS | * | NUMBER 08-4000 |
| WASHINGTON MUTUAL MORTGAGE<br>COMPANY<br>Defendant | * | SECTION "L" (1) |

## ORDER & REASONS

Currently pending before the Court is Defendant Washington Mutual's Motion for Summary Judgment (Rec. Doc. No. 18). For the following reasons, the motion is GRANTED.

## I. BACKGROUND:

This dispute arises out of the use of insurance proceeds paid to compensate the Plaintiff and his former spouse April Owens DiBenedetto for losses arising out of damage to their marital home and personal property therein as a result of Hurricane Katrina. The Plaintiff was married in August of 2000 to April Owens DiBenedetto. Thereafter, Mrs. DiBenedetto acquired property located at 1645 Vela Cove in Slidell, LA. Washington Mutual Bank held a mortgage on the property in the amount of $380,000.00. The Plaintiff signed the mortgage as an Intervenor and Non-Borrowing Spouse, and according to the Plaintiff, the property was purchased as Mrs. DiBenedetto's separate property.

The Plaintiff and Mrs. DiBenedetto were divorced in July of 2006, but he claims that she donated the property to him (along with all insurance proceeds) on November 20, 2006 by a signed act of donation. Subsequent to the divorce, the 22nd Judicial District Court in St. Tammany Parish granted Mrs. DiBenedetto's Motion to Revoke the donation of the property to

Mr. DiBenedetto. Shortly thereafter, on December 29, 2006, Mr. and Mrs. DiBenedetto settled with their homeowner's insurance company, CHUBB Insurance, for damage to their home and property as a result of Hurricane Katrina in the amount of $350,000.00.[1] The funds were subsequently placed into an escrow account with Washington Mutual. The Settlement Agreement listed the following line items: Structure: $76,000.00; Contents: $208,000.00; and Additional Living Expenses: $66,000.00.

Washington Mutual received letters on March 30 and April 4, 2007 from Mrs. DiBenedetto and her attorney Craig P. Hart instructing it to pay the balance of the mortgage loan, minus a portion to be paid to the Discon Law Firm for services rendered, with the settlement funds. Mr. DiBenedetto did not and does not object to the payment of the funds to the Discon Law Firm. Mr. DiBenedetto, through his attorney, instructed Washington Mutual by telefax on April 3, 2007 not to pay off the existing mortgage with the settlement funds and that the mortgage was subject to a Temporary Restraining Order issued by the 22nd Judicial District Court for St. Tammany Parish on October 17, 2006. On or about September 4, 2007, Washington Mutual received another fax from Mrs. DiBenedetto instructing them to pay off the mortgage with the settlement funds. Some time between September 6 and October 10, 2007 (the date is in dispute), Washington Mutual issued a check paying off the mortgage with the settlement funds held in escrow. The Plaintiff now claims that Washington Mutual failed to comply with the Settlement Agreement and failed to return to him his portion of the settlement funds ($104,000.00 for one half of the contents of the house; and $46,000 representing costs for additional living expenses). He also claims he should receive interest on those funds, as well as court costs, expert fees, and damages from lost business opportunities.

---

[1] *See* Rec. Doc. No. 24-2, Exhibit 2

This case is before the Court on diversity of citizenship. Washington Mutual Bank (incorrectly referred to as Washington Mutual Mortgage Company) is a corporation with its principal place of business in South Carolina. The Plaintiff Paul DiBenedetto is a citizen and resident of Louisiana. Accordingly, there is complete diversity between the parties. JPMorgan Chase recently acquired the assets and liabilities of Washington Mutual Bank ("Washington Mutual"). As such, it acts as the Defendant Washington Mutual in this case.

## II. PRESENT MOTION

On April 28, 2009, the Defendant JPMorgan Chase Bank moved for summary judgment. JPMorgan Chase claims that the Plaintiff cannot prevail as a matter of law and that, since the Plaintiff bears the burden of proof at trial, its motion for summary judgment should be granted. JPMorgan Chase Bank claims that the home was a community asset, not the separate property of Mrs. DiBenedetto. As evidence, it attaches an Order dated October 2, 2008 from the 22nd Judicial District Court for St. Tammany Parish declaring the "immovable property and improvements thereon located at 1645 Vela Cove, Slidell, Louisiana . . . to belong to the community previously existing between April Owens DiBenedetto and Paul A. DiBenedetto."[2] Likewise, it claims that because the property belonged to the community, the obligation secured by the mortgage on the property belonged to the community, as well. Therefore, it claims that the Plaintiff suffered no damages because the settlement funds were used to satisfy an obligation for which Mr. DiBenedetto was responsible.

The Defendant further claims that, even if some portion of the settlement funds allocated for the home's contents was Mr. DiBenedetto's separate property, it was still properly used for the elimination of a community debt. Accordingly, it argues that the Plaintiff was not damaged.

---

[2]*See* Rec. Doc. No. 18-19

Alternatively, it claims that, under the terms of the mortgage, to which Mr. DiBenedetto agreed by signing the document, it had the right to apply insurance proceeds to the outstanding debt. The Defendant offers as evidence the Mortgage agreement which states that "if restoration or repair is not economically feasible or if Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument."[3] Furthermore, it states that it was instructed to apply the settlement funds to the mortgage by its customer, April DiBenedetto, and offers as evidence the letters from Mrs. DiBenedetto instructing it to do so.[4] Accordingly, it argues that the Plaintiff cannot prevail as a matter of law.

The Plaintiff, in opposition, contends that the house, along with all insurance proceeds specifically designated for damage to the structure, was Mrs. DiBenedetto's separate property. He argues, however, that the settlement money for the alternative living expenses and contents of the house were community property, a portion of which was solely his. Additionally, he claims that some of the contents of the house were his separate property because they were acquired prior to his marriage to Mrs. DiBenedetto. He also claims to have advised the Defendant of a Temporary Restraining Order dated October 13, 2006 prohibiting the alienation of community assets.[5] Accordingly, he argues that the Defendant improperly allowed Mrs. DiBenedetto to satisfy her separate obligation with community property.

## III. LAW & ANALYSIS

Summary Judgement will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law. Fed R.

---

[3] *See* Rec. Doc. No. 18-4, Section 5, pp. 5-6

[4] *See* Rec. Doc. No. 18-12, 18-13, and 18-16

[5] *See* Rec. Doc. No. 24-2, Exhibit 5

Civ P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986); *Brown v. City of Houston, Tex.*, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

When considering a motion for summary judgement, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgement demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Boimedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

In the instant case, Defendant JP Morgan Chase first argues that the property in question was community property and thus that the obligation underlying it was a community obligation. Accordingly, it argues that the Plaintiff is unable to demonstrate that he suffered damages, because the Defendant used community property to satisfy a community obligation. Plaintiff maintains that both the house itself and the settlement funds for the house were the separate property of Mrs. DiBenedetto. He claims, however, that the settlement money for the alternative living expenses and contents of the house were community property, a portion of which belonged to him. Thus, he contends that the Defendant improperly allowed Mrs. DiBenedetto to satisfy her separate obligation with community property. As evidence for this proposition,

5

Plaintiff cites three documents: the deed of sale for the house, in which he "declared the paraphernality of the property his wife is purchasing,"[6] the Settlement Agreement between the DiBenedettos and CHUBB Insurance,[7] and a Temporary Restraining Order prohibiting the disposal of community assets.[8] He claims that this evidence shows that his ex-wife used the insurance proceeds from the community property to pay off the mortgage on the house, which he claims was her separate obligation and that the Defendant allowed her to do so with knowledge of the Restraining Order.

Several issues dispositive to the arguments advanced by the parties have previously been decided during the couple's divorce proceedings in state court. As both parties acknowledge, the 22nd Judicial District Court in St. Tammany Parish issued a ruling classifying the property in question and all improvements thereon as community property belonging to the community previously existing between Mr. and Mrs. DiBenedetto.[9] While the Plaintiff wishes to go to trial to "reveal the egregious manner in which . . . the presiding judge" handled his claim, it is clearly beyond the ability of this Court to disturb such a ruling.

Furthermore, even if it were not beyond this Court's ability, it suffices to say that the ruling was not arbitrary. Generally, all obligations incurred by a spouse during the marriage are presumed to be community obligations. La. Civ. Code Ann. art. 2361 (2009). A community obligation is defined as "[a]n obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse." La. Civ. Code Ann. art. 2360 (2009). During the course of a marriage, either a

---

[6] *See* Rec. Doc. No. 24-2, Exhibit 4

[7] *See* Rec. Doc. No. 24-2, Exhibit 2

[8] *See* Rec. Doc. No. 24-2, Exhibit 5

[9] *See* Rec. Doc. No. 18-19

husband or wife, "acting alone, may incur a community obligation." *Sciortino v. Bank of La.*, 97-1420, p. 4 (La. App. 4 Cir. 01/28/98); 705 So. 2d 813, 816. The burden of overcoming the presumption of community property is on the party alleging its separate character, and this burden must be satisfied by "strict, clear, positive and legally certain" proof that the property was acquired with separate funds. *See Emerson v. Emerson*, 322 So. 2d 347, 250-51 (La. Ct. App. 1975); *Succession of Hyde*, 281 So. 2d 136, 140 (La. Ct. App. 1973), *aff'd* 292 So. 2d 693 (La. 1974). An obligation incurred for the domestic dwelling of a married couple clearly falls within the scope of "the common interest of the spouses," and the case law supports such a reading. La. Civ. Code Ann. art. 2360 (2009); *see e.g., McGee v. McGee*, 2004-0288 (La. App. 1 Cir. 3/24/05); 905 So. 2d 300 (holding that an obligation incurred by both spouses which was secured by a mortgage on the husband's separate property was a community obligation). Considering the "very strict, difficult standard" necessary to overcome the presumption that a piece of property acquired during marriage is community property, this Court is not persuaded by the Plaintiff's argument that the state court's decision to classify the property as community property was arbitrary or egregious. *Martinez v. Martinez*, 556 So. 2d 668, 675 (La. Ct. App. 1990).

Even assuming that the house had not been previously classified as community property, the Plaintiff has failed to produce any actual evidence in support of his allegation that the house was a separate obligation or that the Defendant was not authorized to use the community funds. The deed of sale on which the Plaintiff relies was produced for and acknowledged by the court in the couple's divorce proceedings.[10] The court, as was pointed out by the Defendant, still found the evidence supported the conclusion that the property was community property (and thus that

---

[10]*See* Rec. Doc. No. 18-19, Paragraph 3

the obligation was a community obligation).[11] Because the house itself is classified as community property, any "damages awarded for loss or injury to a thing belonging to the community" are also classified as community property. La. Civ. Code Ann. art. 2338 (2009). In fact, the Defendant has produced evidence that the Act of Donation upon which the Plaintiff relies was revoked by the court during the couple's divorce proceedings.[12]

Similarly, the Settlement Agreement which the Plaintiff cites as evidence that he was to receive $46,000 in separate funds for additional living expenses fails to establish such a proposition. Nothing in the agreement indicates such an allocation of funds. Instead, the agreement simply indicates that "the Plaintiffs under the Policy" were to receive damages, "including $66,000 for ALE."[13] The agreement was signed by both Paul and April DiBenedetto. Likewise, the Temporary Restraining Order which the Plaintiff cites as evidence that the Defendant improperly applied the funds to the loan balance also fails to establish the existence of a genuine issue of material fact. While the Plaintiff has produced evidence that he informed the Defendant of the Temporary Restraining Order,[14] he has produced no evidence that the Order was still in effect a year later when the settlement funds were applied to the loan balance. When a temporary injunction is issued "in conjunction with a rule to show cause for a preliminary injunction, prohibiting a spouse from . . . (1) [d]isposing of or encumbering community property," the temporary injunction only remains in effect "until a hearing is held on the rule for the preliminary injunction." La. Code Civ. Proc. Ann. art. 3604 (2009). According to the evidence presented by the Plaintiff, the hearing for the preliminary injunction was held on

---

[11] *See* Rec. Doc. No. 18-19

[12] *See* Rec. Doc. No. 18-18

[13] *See* Rec. Doc. No. 24-2, Exhibit 2, pg. 1

[14] *See* Rec. Doc. No. 24-2, Exhibit 3

December 20, 2006, nearly 9 months prior to the time the Plaintiff alleges the Defendant improperly applied the settlement funds to the loan balance. The Plaintiff has failed to produce any evidence that an injunction was issued which would prohibit the disposal of community assets. More importantly, the Defendant has shown that Mrs. DiBenedetto was judicially authorized to sell the couple's marital dwelling, to pay off encumbrances on the property, and to deposit the remainder of the proceeds in the registry of the court during the divorce proceedings.[15]

Thus, no real controversy exists as to whether the obligation was a community obligation. Indeed, a dispute is only genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson*, 477 U.S. at 250; *TIG Ins. Co.*, 276 F.3d at 759. No reasonable trier of fact could find that the property was Mrs. DiBenedetto's separate property based on the evidence submitted by the Plaintiff. Because the obligation was a community obligation, it "may be satisfied after termination of the regime from the property of the former community . . ." La. Civ. Code Ann. art. 2357 (2009); *see M. Carbine Restoration, Ltd. v. Sutherlin*, 544 So. 2d 455, 457-58 (La. Ct. App. 1989) (holding that wife was liable for community debt to extent of her share of the community property, even though her husband incurred the debt and had paid for the renovations); *see also Lawson v. Lawson*, 535 So. 2d 851, 852 (La. Ct. App. 1988) (holding that "the creditor of a spouse has the same property available to satisfy the debt after the community regime has ended as he had during its existence: all assets of the community, including the interest of the non-debtor spouse, as well as the separate property of the spouse who incurred the debt"). Accordingly, the Plaintiff, as a matter of law, cannot demonstrate that he suffered any damage as a result of the Defendant's actions.

---

[15] *See* Rec. Doc. No. 18-21

Even assuming, *arguendo*, that the Plaintiff could establish that a portion of the settlement proceeds were his separate property, the Defendant argues that summary judgment is still proper. As the Defendant rightly points out, even if a community debt had been improperly satisfied with his separate property, Mr. DiBenedetto's proper cause of action would not be against the Defendant in this case. Louisiana Civil Code article 2365 provides that "[i]f separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used." *See Lewis v. Lewis*, 2003-1631, pp. 3-4, (La. App. 4 Cir. 4/7/04); 872 So. 2d 548, 550-51 (holding that wife was entitled to reimbursement from her husband of one-half of the monies paid on a community obligation with her separate property after divorce); *see also Clemons v. Clemons*, 42, 129, pp. 5-6 (La. App. 2 Cir. 5/9/07); 960 So. 2d 1068, 1072-73 (holding that husband's refinancing of and payments on community debt with his separate property entitled him to reimbursement from wife following their divorce). Accordingly, in the case that Plaintiff's separate property was used to satisfy his wife's separate obligation, he would be entitled to reimbursement from Mrs. DiBenedetto – not the Defendant.

Furthermore, even if satisfaction of a community obligation with a spouse's separate property is ordinarily prohibited, Mr. DiBenedetto appears to have contractually assumed the obligation which would authorize it. Louisiana Civil Code article 2357 does, in fact, prohibit a non-incurring spouse from being held personally liable (i.e., the obligation can be satisfied with the spouse's separate property) for debt incurred by the other spouse either during the duration of the marriage or after its termination, even if the obligation is classified as a community obligation. One exception to this general rule, however, is outlined by the second paragraph of Article 2357, which states that "[a] spouse may by written act assume responsibility for one-half

of each community obligation incurred by the other spouse." When the spouse assumes this responsibility, his separate property may properly be used to satisfy the community obligation. *See e.g., Finance One of Houma, L.L.C. v. Barton*, 1999-1719, pp. 3-4 (La. App. 1 Cir. 9/22/00); 769 So. 2d 739, 741-42 (holding that creditor was not entitled to judgment to seize the separate property of husband based on notes which he did not sign); *see also Tri-State Bank and Trust v. Moore*, 609 So. 2d 1091, 1092 (La. Ct. App. 1992) (holding that wife's separate property could not be seized because she signed neither the promissory notes nor the mortgage documentation).

In this case, the Defendant has produced uncontroverted evidence that the Plaintiff obligated himself to pay the note under the terms of the mortgage, which state: "Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation."[16] As such, even if his personal property had been used to satisfy the community obligation incurred by Mrs. DiBenedetto, the Defendant was within its rights under the terms of the mortgage to use the Plaintiff's separate property in satisfaction of the mortgage obligation. Thus, the Plaintiff has failed to establish the existence of material facts in dispute, and the Defendant is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that the Defendant's Motion for Summary Judgment is GRANTED.

New Orleans, Louisiana, this __26th__ day of June, 2009.

_____
**U.S. DISTRICT JUDGE**

---

[16] *See* Rec. Doc. No. 18-4, Section 35, pp. 14-15